UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
USUKUMAH E. USUKUMAH, M.D.,

           Plaintiff

-against-

PAUL KASTELL, M.D., SALVATORE
RUSSO, MARK HARTMAN, and
NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION,

           Defendants
-------------------------------------------------------X

Case No. CV 15 0374

VITALIANO, J.

REYES, M.J

**COMPLAINT**

Plaintiff, USUKUMAH E. USUKUMAH, M.D. ("USUKUMAH"), by his attorneys, LAW OFFICES OF K.C. OKOLI, P.C., and MADU, EDOZIE & MADU, P.C., complaining of the defendants, alleges as follows:

## JURISDICTION

1. This is an action for money damages, declaratory and injunctive reliefs. This action is brought pursuant to 42 U.S.C. §§1981, 1983 and 1985, and the New York City Administrative Code ("NYC Human Rights Law"), Title 8.

2. The jurisdiction of the Court is invoked to secure the protection and redress the deprivation of rights guaranteed to persons by the Due Process Clause of the United States Constitution, 42 U.S.C. §§1981, 1983, 1985 and NYC Human Rights Law.

3. This court has supplemental jurisdiction over the related state causes of action

asserted herein pursuant to 28 U.S.C. §1367.

4. Venue is proper in this district, based upon the fact that a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the district.

## PARTIES

5. At all times relevant to this action, USUKUMAH was licensed to practice Medicine in the State of New York.

6. At all times relevant to this action, USUKUMAH was employed and had privileges at Woodhull Medical Center ("Woodhull"), located in the Borough of Brooklyn, County of Kings, City and State of New York.

7. At all times relevant to this action, USUKUMAH had medical privileges at Woodhull and was a medical staff at Woodhull for over nine (9) years.

8. At all times relevant to this action, defendant Paul Kastell ("KASTELL") was licensed to practice medicine in the State of New York, and was Chair, Department of Obstetrics and Gynecology at Woodhull.

9. At all times relevant to this action, defendant Salvatore Russo ("RUSSO") was the General Counsel of the New York City Health and Hospitals Corporation ("NYCHHC").

10. At all times relevant to this action, defendant Mark Hartman ("HARTMAN") was Counsel in the office of the General Counsel of NYCHHC.

11. Upon information and belief, at all relevant times mentioned herein, defendant, NYCHHC is a public corporation established under and by virtue of the laws of the State of New York.

2

12. At all times mentioned herein, NYCHHC owned and managed Woodhull.

## ALLEGATIONS

13. USUKUMAH is an African American male who was born in Nigeria.

14. KASTELL is Caucasian male and, upon information and belief, a United States born citizen.

15. Upon information and belief, at all times relevant to this action, KASTELL was very familiar with the provisions of Woodhull's Medical and Dental Staff Bylaws. Specifically, KASTELL is familiar with the provisions of the Bylaws relating to the granting and withholding of privileges of medical staff practitioners at Woodhull.

16. In or about January 2012, KASTELL falsely claimed that USUKUMAH was solely responsible for the poor outcome for a patient who was treated by multiple physicians and medical staff at Woodhull between August 23, 2011 and August 24, 2011.

17. This patient died and a medical malpractice action was commenced in connection with the treatment the decedent received at Woodhull. While NYCHHC, Dr. Fatima Legrand and Dr. Reginald Ruiz were named as defendants in that lawsuit, USUKUMAH was never named in the lawsuit nor was USUKUMAH ever sued in connection therewith.

18. Dr. Legrand and Dr. Ruiz are not African Americans, nor were they born in Nigeria like USUKUMAH.

19. In or about January 2012, KASTELL also falsely claimed that USUKUMAH was solely responsible for the poor quality of treatment which was rendered to another patient by multiple physicians at Woodhull between January 21, 2012 and January 22, 2012.

20. This January 2012 patient was eventually discharged from Woodhull without problems or complaints.

21. USUKUMAH is board-certified in OB/GYN in the United States, England and Nigeria, countries where he has practiced medicine for a total of more than 35 years without any untoward incident.

22. With full knowledge that his actions would result in the summary suspension of the clinical privileges of USUKUMAH at Woodhull, KASTELL shared his false claims about USUKUMAH with the Medical Director of Woodhull, Edward Fishkin, M.D.

23. Based upon the aforesaid false allegations by KASTELL, by a memorandum dated January 25, 2012, Dr. Edward Fishkin, summarily suspended USUKUMAH's clinical privileges effective immediately. USUKUMAH was also notified of this suspension by a separate writing.

24. Through its Ad Hoc Committee at Woodhull, NYCHHC conducted a hearing to determine the propriety or otherwise of the allegations leading to the summary suspension of USUKUMAH's clinical privileges. Said hearing was concluded on October 23, 2012.

25. In breach of Woodhull's Bylaws and USUKUMAH's rights to Due Process, NYCHHC failed to issue the Ad Hoc Committee's decision "Within thirty (30) working days after the conclusion of the hearing or as soon as practicable thereafter."

26. Upon information and belief, RUSSO and HARTMAN are attorneys who are licensed to practice law in the State of New York; they are both very familiar with the Bylaws of Woodhull.

27. RUSSO, HARTMAN and KASTELL conspired together and with others unknown to the plaintiff, to continue to delay and withhold the issuance of the Ad Committee's decision

4

on the hearing regarding the summary suspension of USUKUMAH's clinical privileges.

28. Despite numerous written communication from USUKUMAH's attorneys to RUSSO and HARTMAN to provide them with information on when the Ad Hoc Committee's decision would come down and to ensure that a decision was timely made, RUSSO and HARTMAN either completely ignored the written communications, or provided untrue and evasive responses.

29. As a result of the continued suspension of USUKUMAH's clinical privileges and the delay of decision on the hearing which began in June 2012 and was concluded in October 2012, on November 15, 2013, NYU Langone Medical Center terminated USUKUMAH's services at that hospital. USUKUMAH also lost all benefits due from his association with NYU Langone Medical Center, including insurance coverage and loss of free college tuition for his son.

30. During the course of Woodhull's Ad Hoc Committee hearing in 2012, KASTELL further caused to be reported to the New York State Office of Professional Medical Conduct ("OPMC"), the aforesaid false allegations which he made about USUKUMAH relating to patients' care at Woodhull, as well as two (2) other allegations of medical misconduct dating back to June 2008 and April 2006.

31. At no time prior to the OPMC complaint had USUKUMAH ever been cautioned or assigned any fault arising from the treatment rendered to both patients at Woodhull in 2006 and 2008 respectively.

32. OPMC commenced its investigation of the aforesaid allegations by interviewing USUKUMAH.

33. By January 2013, it became apparent to KASTELL and NYCHHC that their trumped up charges and false allegations against USUKUMAH would not succeed with OPMC.

34. In a further show of malice and spite, intended to cause USUKUMAH to lose his license to practice medicine in the State of New York, KASTELL and NYCHHC caused two (2) additional instances of alleged medical misconduct against USUKUMAH to be submitted to OPMC, bringing the total number of alleged medical misconduct to a total of six (6).

35. In November 2014, OPMC concluded its investigation of all of the six (6) complaints and closed its record without any adverse finding against USUKUMAH.

36. KASTELL neither caused the summary suspension of Dr. Ruiz (non African-American), the physician who was largely responsible for the treatment of the first patients who died and for or which USUKUMAH's clinical privileges were summarily suspended. Nor did KASTELL cause Dr. Ruiz to be reported to OPMC for medical misconduct arising from said treatment.

37. USUKUMAH believes that part of the reason no action was taken against Dr. Ruiz is because Dr. Ruiz is not African American.

38. KASTELL has forced out other African American physicians from their positions at Woodhull. These are: Dr. Williams, Dr. Kilanko and Dr. Tummings.

39. There are Caucasian and non-African American physicians who have had bad outcomes with patients at Woodhull, resulting in maternal and perinatal deaths but were never reported to OPMC by KASTELL. Nor were the clinical privileges of these physicians at Woodhull ever suspended.

40. Apart from Dr. Ruiz, these Caucasian and non African-American physicians

6

include Dr. Doefler, Dr. Gudz and Dr. Gordienko.

## AS AND FOR A FIRST CAUSE OF ACTION UNDER 42 USC §1983
## AND NYC HUMAN RIGHTS LAW

41. Plaintiff repeats and re-alleges each and every allegation of paragraphs "1" through "39" above as if specifically set forth herein.

42. At all times mentioned herein, the defendants were acting under color of state law.

43. By reason of the foregoing, defendants have wrongfully interfered with USUKUMAH's Due Process Rights.

44. Plaintiff has thereby suffered loss and damage.

## AS AND FOR A SECOND CAUSE OF ACTION UNDER 42 USC §1981
## AND NYC HUMAN RIGHTS LAW

45. Plaintiff repeats and re-alleges each and every allegation of paragraphs "1" through "43" above as if specifically set forth herein.

46. By reason of the foregoing, defendants have discriminated against USUKUMAH on the basis of his race, and interfered with USUKUMAH's right to make and enforce contracts, including USUKUMAH's contract with NYCHHC and NYU Langone Medical Center.

47. Plaintiff has thereby suffered loss and damage.

## AS AND FOR A THIRD CAUSE OF ACTION UNDER 42 USC §1985 AND NYC HUMAN RIGHTS LAW

48.     Plaintiff repeats and re-alleges each and every allegation of paragraphs "1" through "46" above as if specifically set forth herein.

49.     KASTELL, RUSSO and HARTMAN conspired together and with one another, and others unknown, to violate USUKUMAH's Due Process Rights by unduly delaying decision on the hearing on the summary suspension of his clinical privileges at Woodhull.

50.     By reason of the foregoing, plaintiff has suffered loss and damage and is continuing to suffer loss and damage.

51.     Plaintiff demands trial by jury of all issues triable by jury.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for the following reliefs against the defendants jointly and severally:

a)   On the First Cause of Action, $10,000,000.00 damages;

b)   On the Second Cause of Action, $10,000,000.00 damages;

c)   On the Third Cause of Action, $10,000,000.00 damages;

d)   Punitive damages against KASTELL, RUSSO and HARTMAN in an amount yet to be determined;

e)   Reasonable Attorney's fees;

f)   Costs and disbursement of this action;

g)   Such further or other relief as the court may deem just and equitable in the

circumstances.

Dated: New York, New York
January 21, 2015

                                              LAW OFFICES OF K.C. OKOLI, P.C.
330 Seventh Avenue
15th Floor
New York, N.Y. 10001
(212) 564-8152

By: _____
K.C. OKOLI, ESQ.

MADU, EDOZIE & MADU, P.C.
1599 East Gun Hill Road
Bronx, New York 10469
(718)379-3500

***Attorneys for Plaintiff***
***USUKUMAH E. USUKUMAH***